UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSEPH C. FINLEY, et al.,

        Plaintiffs,

   v.

JAMES TAKISAKI, et al.,

        Defendants.

NO. C05-1118JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on Defendants' motion to dismiss (Dkt. # 36). Neither party has requested oral argument, and the court finds this motion appropriate for disposition based on the parties' briefs and accompanying declarations. For the reasons stated below, the court GRANTS Defendants' motion.

## II. BACKGROUND

Plaintiffs Joseph Finley and Harry Dorssers are former principals in Hawks Prairie Industrial Properties LLC ("HPIP").[1] HPIP's principal asset was the first lot ("Lot 1") in a series of four lots in an east-to-west row in Lacey, Washington. Lot 1 connects to the only public roadway near the properties via an easement across Lots 2, 3, and 4. Defendants own

---

[1] The court summarizes the facts as Plaintiffs allege them in their amended complaint (Dkt. # 17).

ORDER- 1

Lots 2, 3, and 4. Lot 1 was subject to a deed of trust whose outstanding balance was approximately $2 million. HPIP was the only grantor of the deed of trust, although Mr. Finley was a personal guarantor of HPIP's obligation.

In early 2001, while HPIP was the debtor in a Chapter 11 bankruptcy case (Case No. 01-153543TTG (Bankr. W.D. Wash.)), Plaintiffs negotiated with a wastewater treatment company to acquire Lot 1. At approximately the same time, Target Corporation ("Target") expressed an interest in purchasing Lots 2, 3, and 4 from Defendants. Target wished to purchase Lots 2, 3, and 4 free of the easement in favor of Lot 1, whereas the wastewater treatment company was not interested in Lot 1 without the existing easement.

While negotiations were pending, Defendants purchased the deed of trust to Lot 1. Plaintiffs allege that in May 2001, Defendants sent a letter to HPIP stating that they would not permit HPIP to pay the balance due under the deed of trust unless it released the easement under the terms of a previous agreement. According to Plaintiffs, there was no previous agreement to release the easement, and the payoff amount Defendants stated in the letter was inflated by approximately $500,000. In addition, Defendants took actions that compelled two minority members of HPIP to sell their membership interests to Plaintiffs.

In June 2001, Defendants filed claims in the bankruptcy court for approximately $1.4 million, claiming that HPIP had tortiously interfered with their negotiations with Target, and had breached a contract to release the easement. Plaintiffs allege that Defendants' claims caused the bankruptcy court to reject its proposed plan of reorganization.

Once the bankruptcy court denied HPIP's reorganization plan, Plaintiffs claim that they were "forced" to sell Lot 1 at a substantial discount because they had no other means of salvaging any value from the property. Plaintiffs sold HPIP, including Lot 1 as its principal asset, to an unnamed third party. The third party battled through the bankruptcy proceedings. Ultimately, the bankruptcy court granted summary judgment against Defendants' breach of

ORDER- 2

1  contract claim, and disallowed their tortious interference claims.  The bankruptcy court

2  confirmed a new plan of reorganization, and HPIP emerged from bankruptcy under its new

3  ownership.

4       Plaintiffs now claim that Defendants' actions are a violation of federal antitrust laws,

5  the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and a breach of the

6  implied covenant of good faith and fair dealing inherent in the deed of trust.  Defendants

7  claim that the bankruptcy court's judgments are a res judicata bar to this action, and that

8  Plaintiffs have failed to state a cognizable claim because, *inter alia*, Plaintiffs have no

9  standing to bring any of the three claims in this action.

### III.  DISCUSSION

11       When considering a motion to dismiss under Rule 12(b)(6), the court construes the

12  complaint in the light most favorable to the non-moving party.  <u>Livid Holdings Ltd. v.

13  Salomon Smith Barney, Inc.</u>, 416 F.3d 940, 946 (9th Cir. 2005).  The court must accept all

14  well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff.  <u>Wyler

15  Summit P'ship v. Turner Broad. Sys., Inc.</u>, 135 F.3d 658, 661 (9th Cir. 1998).  Dismissal for

16  failure to state a claim should not be granted "unless it appears beyond a reasonable doubt

17  that the plaintiff can prove no set of facts in support of his claim which would entitle him to

18  relief."  <u>Id.</u> (internal quotations and citations omitted).  The court's review of the record on a

19  Rule 12(b)(6) motion is limited to the complaint and documents referenced within the

20  complaint.  <u>Branch v. Tunnell</u>, 14 F.3d 449, 454 (9th Cir. 1994).

21       The court first considers Plaintiffs' standing in this action.[2]  Taking all allegations in

22  the complaint as true, there is no question that HPIP suffered an injury because of

---

24      [2]Defendants questioned Plaintiffs' standing only as to their RICO and antitrust claims. Nonetheless, a court must address general standing *sua sponte* where it comes into question. <u>RK
25  Ventures, Inc. v. City of Seattle</u>, 307 F.3d 1045, 1055 (9th Cir. 2002).

26  ORDER- 3

1  Defendants' conduct.  The value of Lot 1 dropped substantially because of Defendants'
2  refusal to release the mortgage interest in the property without extinguishing the easement.
3  Defendants allegedly caused the wastewater treatment facility, a buyer willing to pay an
4  attractive price, to abandon negotiations with HPIP.  Moreover, Defendants conduct scuttled
5  the proposed plan of reorganization for HPIP.

6       Plaintiffs, however, cannot bring suit to redress HPIP's injury; they must assert their
7  own injury.  EMI, Ltd. v. Bennett, 738 F.2d 994, 996 (9th Cir. 1984) ("Courts require a
8  plaintiff to have a 'personal stake in the outcome of a case' to warrant *his* invocation of
9  federal-court jurisdiction . . . .") (citation omitted, emphasis in original).  The fact that
10 Plaintiffs were at one time members of HPIP is of no consequence.  A "shareholder does not
11 have standing to redress an injury to the corporation."  Shell Petroleum, N.V. v. Graves, 709
12 F.2d 593, 595 (9th Cir. 1983); United States v. Stonehill, 83 F.3d 1156, 1160 (9th Cir. 1996)
13 ("Well-established principles of corporate law prevent a shareholder from bringing an
14 individual direct cause of action for an injury done to the corporation or its property by a third
15 party.").  For example, the Ninth Circuit has held that even the sole shareholder and personal
16 guarantor of a corporation has no standing to pursue antitrust claims on the corporation's
17 behalf.  Sherman v. British Leyland Motors, Ltd., 601 F.2d 429, 439 (9th Cir. 1979).
18 Similarly, a shareholder or corporate guarantor cannot bring a RICO claim to recover for acts
19 that diminish the value of the corporation.  Sparling v. Hoffman Constr. Co., 864 F.2d 635,
20 640 (9th Cir. 1998).  As to the breach of contract claim based on the deed of trust for Lot 1,
21 Plaintiffs were not parties to the deed of trust.  Mr. Finley's status as a guarantor of HPIP's
22 obligations under the deed of trust is insufficient to confer standing.  Under Washington law,
23 the guarantor of a contract has no standing to affirmatively pursue redress for a breach of the
24 contract.  Miller v. United States Bank, N.A., 865 P.2d 536, 542 (Wash. Ct. App. 1994).
25
26 ORDER- 4

1    Although HPIP is a limited liability company ("LLC") rather than a corporation, the
2  distinction makes no difference in the court's analysis of standing. Under Washington law,
3  LLC members have no interest in the LLC's property, RCW § 25.15.245(1), just as corporate
4  shareholders lack an interest in corporate property. In a case similar to the one at bar, a court
5  rejected the claims of an LLC member, holding that the claims belonged to the LLC itself. In
6  re Real Marketing Servs., LLC, 309 B.R. 783, 788 (S.D. Cal. 2004) ("[M]embers of an LLC
7  hold no direct ownership interest in the company's assets and therefore are not directly
8  injured when the company suffers an improper deprivation of those assets.").[3]

9    To establish standing, Plaintiffs would have to allege a direct injury that is independent
10 of HPIP's injury. Shell Petroleum, 709 F.2d at 595; Real Marketing, 309 B.R. at 789.
11 Plaintiffs have no doubt shown, at least on the pleadings, that they suffered personal
12 economic loss as a result of Defendants' wrongdoing. This is insufficient, however, because
13 their personal loss derives from their membership in the LLC. Shell Petroleum, 709 F.2d at
14 595; Real Marketing, 309 B.R. at 789; see also Sparling, 864 F.2d at 640; Sabey v. Howard
15 Johnson & Co., 5 P.3d 730, 735 (Wash. Ct. App. 200). Instead of a derivative loss, Plaintiffs
16 must allege that they suffered an injury distinct from those of any other LLC member, or that
17 there was a special relationship between themselves and the Defendants. Sparling, 864 F.2d
18 at 640. There are no such allegations in the instant complaint.[4] Like the court in Real
19 Marketing, the court concludes that each of Plaintiffs' claims is derivative of their interest in

---

[3] California law does not differ materially from Washington law regarding ownership of LLC assets. Compare RCW § 25.15.245(1), with Cal. Corp. Code §17300.

[4] Plaintiffs allege that they entered an agreement with the third party who purchased HPIP whereby the third party would pay Mr. Dorssers $400,000 if Lot 1 sold, and both Plaintiffs would share in the proceeds of the property if it sold for a high enough price. Plaintiffs have not alleged any claims based on a breach of those agreements or on Defendants' interference with those agreements. In addition, Mr. Dorssers is apparently a creditor holding a subordinate note on Lot 1. He does not allege any breach of his credit agreement or interference with the credit agreement.

ORDER- 5

HPIP.  309 B.R. at 789 (dismissing breach of contract claim), 791 (dismissing fraud and misrepresentation claims), 792 (dismissing tortious interference with contract claim).

The complaint reveals that the only plaintiff with standing to assert the claims before the court is HPIP, an entity in which the Plaintiffs no longer have an interest.  The court must therefore dismiss the complaint

### IV.   CONCLUSION

For the reasons stated above, the court GRANTS Defendants' motion to dismiss the complaint (Dkt. # 36).  At this stage, it is not clear that Plaintiffs can amend their complaint to make allegations that would give them standing to pursue *these* claims.  They have, however, requested leave to amend, and the court will permit them to file an amended complaint no later than May 12, 2006.  The amended complaint shall be in "redlined" format or another format that allows the court to easily identify any new allegations.  The parties shall not file additional motions regarding the amended complaint unless the court grants leave to do so.

If Plaintiffs wish to assert new claims, however, they may not do so in an amended complaint. Instead, they must file a new action.  Therefore, by May 12, 2006, Plaintiffs shall either file an amended complaint that alleges facts that give them standing, or they shall file a statement that they do not seek to amend the complaint.  If they choose the latter option, the court will dismiss this action without prejudice.

Dated this 28th day of April, 2006.

JAMES L. ROBART
United States District Judge

ORDER- 6